DECISION
The matter before the Court is the appeal of James M. Sabetti ("Sabetti") from a decision of the Rhode Island Board of Registration For Professional Engineers (the "Board"), which found that Sabetti had violated R.I.G.L. § 5-8-18 (2) in that he was grossly negligent and incompetent in fulfilling his professional duties. Jurisdiction in this Court is pursuant to R.I.G.L. § 42-35-15.
Standard of Review
The review of a decision of the Board by this Court is controlled by R.I.G.L. § 42-35-15 (g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswellv. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). A court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458.
Facts and Travel
Pursuant to an inquiry sent by the Board to Sabetti, a hearing was held on January 13, 1993 to investigate Sabetti's role in a construction accident which occurred on the afternoon of October 26, 1992 at 774-776 Charles Street in Providence. The investigation by the Board evolved from the publicity that was associated with the death of an excavator on the job site.
Sabetti was engaged by the owner of the property to design and supervise the installation of the foundation for the addition to the building already existing on the property. In conjunction with his retainment on the project, Sabetti signed and filed with the Providence Building Official's Office a project certification indicating his professional responsibility to insure that the work is proceeding in accordance with the documents approved for the building permit as specified in section 128.2.2 of the Rhode Island Building Code.
After the initial meeting on January 13, 1993, the Board reviewed the information it had obtained and determined a formal hearing was necessary. As a result, the Board sent written notice to Sabetti setting forth specific allegations which Sabetti would be required to address at the formal hearing. The Board also recommended that Sabetti retain counsel. The Board held open hearings on this matter on April 14, May 21, June 2, and June 9, 1993. At the conclusion of the hearings, the Board made the following findings of fact and conclusions upon which the Board's final decision is based. The court found as follows:
 (1) That the respondent, James M. Sabetti, was engaged by the property owner as a Professional Engineer to provide certain design services and inspection services based upon his agreement with the property owner and his signature on the project certification form prepared by and submitted to the Providence Building Official's Office.
 (2) That as a result of the engagement of the respondent, James M. Sabetti on the job site known as 774-776 Charles Street, the respondent visited the site and otherwise became familiar with the conditions existing upon the job site to include the existence of a vertical embankment with an unsupported concrete foundation wall some ten (10) to twelve (12) feet above the then existing grade of the site at the time of commencement of work.
 (3) The respondent thereafter did design a foundation structure for the proposed addition to be placed on the site and that this design was submitted to the Providence Building Official's Office under the respondent's stamp and signature.
 (4) That during the course of discussion with the Providence Building Official's Office, the respondent became familiar with and signed a project certification form prepared by the City of Providence whereby he agreed to provide certain services by way of inspection and/or supervision on the job site in lieu of those services being provided by the Providence Building Official's Office.
 (5) That as a result of the respondent's employment by Mr. Braziano Broccoli, the respondent made five (5) visits to the job site to include a final visit to the site on the morning of 26 October 1992, the date the fatality occurred.
 (6) That the plans and/or design prepared by the respondent did not reflect either by drawing or by annotations the need for any shoring or other protective devices nor did it reflect alternative means of making the job site safe during the course of excavation and construction of the footings which the respondent had designed.
 (7) That on previous visits to the job site prior to 26 October 1992, respondent did physically enter into excavation holes to inspect footings being formed and otherwise determine that original grade had been established.
 (8) That on 26 October 1992, the respondent visited the job site but did not enter into the holes which he had inspected because said excavation sites were, in the expressed opinion of the respondent/licensee, unsafe and dangerous.
 (9) As a result of observing conditions on the job site on or about 26 October 1992, the respondent notified both the contractor and the owner's representative, Mr. David Broccoli, that the job site was unsafe and that anyone who was to enter into those holes was "crazy." Thereafter, the respondent indicated that he had "quit" the job because of a dispute over the method and amount of payments that he was to receive for supervising the work in question.
 (10) That after leaving the job site on or about 9:00 a.m. on 26 October 1992, the respondent did not notify any official of the City of Providence specifically the Providence Building Official's Office as to the dangerous and unsafe conditions which he had observed on the site that morning. Said conditions included at that time, an unrestrained vertical embankment of approximately twenty (20) to twenty-two (22) feet in height directly under which individuals were working without the benefit of protective devices or other procedures intended to ensure their safety.
 (11) That the respondent failed to notify the Providence Building Official's Office or any other agency of the City of Providence that he had "quit" the project and was no longer the Professional Engineer acting as the "certification agent" in accordance with the project certification form executed by the respondent and filed with the City of Providence, Building Official's Office.
 (12) That at the time the respondent had "quit" the project on 26 October 1992, the respondent was aware of the fact that there had already been one (1) cave-in on the site.
 (13) The respondent, James M. Sabetti, had a professional obligation and duty to notify the Providence Building Official's Office of the unsafe and dangerous conditions existing on the job site on 26 October 1992 and further that the respondent James M. Sabetti, had an obligation to notify the Providence Building Official's Office of the fact that he had "quit" the project and would no longer act in a capacity as a Professional Engineer "certifying" the work being performed on that site effective 9:00 a.m. on 26 October 1992.
Based upon the above findings, the Board voted three (3) to one (1)[1] to find Sabetti guilty of professional misconduct and voted to suspend his license for three (3) years. The Board stated in its decision: "the bottom line in this matter is that it is the opinion of the Board that Mr. Sabetti had a professional obligation as a Registered Professional Engineer to ensure that obvious, dangerous and unacceptable job site conditions were brought to the attention of the appropriate authorities whether or not the construction personnel or owners on site felt the need to do so or not." (Decision and Order, page 10, ¶ 2). Although the Board did state that they could not establish by competent evidence that had Sabetti reported the dangerous conditions at the job site the accident would not have occurred, the Board concluded that a professional cannot be excused from taking the proper steps to enforce applicable law and codes simply by quitting a job.
A professional engineer has an affirmative duty to bring to the attention of the owner and contractor and the Building Official any condition or circumstance which constitutes a violation of the Building Code, the laws of the State and/or any applicable health and safety codes.
In the instant appeal, Sabetti makes five exceptions to the Board's proceedings. First, Sabetti states that the record before this Court is not complete and that a review of the testimony without the exhibits is "meaningless." Since Sabetti filed his appeal, the Board has furnished the entire record. Therefore, the issue is moot.
Next, Sabetti claims that the Board failed to include in the record to this Court a copy of the so called "minority opinion" written by Mr. Joseph Mulcahy, P.E., a member of the Board who dissented in the 3-1 decision made in August of 1993. The minority opinion was filed with the Board on October 9, 1993, after Sabetti filed this appeal and the Board certified the record to the Superior Court. From a review of the entire record and the timing of the minority opinion, it is evident that the minority opinion was not issued by the Board. The signed Decision and Order by the entire Board clearly indicates that Mr. Mulcahy had voted against the final disposition, and no mention of a minority opinion was made within the official opinion of the Board. Because this Court finds that there was competent evidence to support the Board's finding of facts, the issue of whether the minority opinion should be part of the record does not have to be addressed by this Court at this time.
Also, as part of its Decision and Order, the Board assessed $1,357.50 in transcript expenses and $4,030.00 in legal fees against Sabetti. The Board states that it has the authority to assess these fees pursuant to R.I.G.L. § 5-8-23[2] and §5-8-20.[3]
Rhode Island General Laws chapter 5-8 et seq. establishes the Board. Under the Administrative Procedures Act, the Board is entitled to promulgate its rules and regulations. Pursuant to the Board's Rule 9,[4] the Board is entitled to assess the costs of the record against the "complaining party unless, after consideration of the evidence, the Board determines that the registrant should bear the cost." In the case at hand, the Board is the complaining party. In its conclusion the Board finds that Sabetti should be held responsible for the $1,357.50 in transcript costs. No reasoning or consideration for this finding pursuant to Rule 9, is made by the Board. Based on this lack of evidence for this findings, this Court determines that the Board must bear these costs. Although the Board has created Rule 9 addressing the issue of costs of the record, no rule or regulation has been promulgated concerning the assessment of attorney fees against the registrant. Nor do the General Laws of Rhode Island allow the Board to assess these fees. Consequently, the costs of $4,030.00 for the Board's attorney, must also be borne by the Board.
Additionally, Sabetti states that demeanor of the hearings was improper; specifically, Sabetti argues that counsel for the Board acted as prosecutor and at the same time as legal advisor to the Board. Because the Board has its own procedural rules and is not a court of law, its evidence gathering techniques are varied and less formal than those of a court of law. Just as "[a]n administrative officer is not required to assume a holy passive role and may participate in the proceeding whenever necessary to the end that the hearing proceed in an orderly, expeditious fashion," counsel's participation at the subject hearing did not constitute prosecutorial misconduct. Davis v.Wood, 427 A.2d 332, 337 (R.I. 1981). Based on a review of the entire record, this Court finds that the hearings before the Board on this matter, although conducted in a haphazard manner, were conducted within the guidelines of the Board's rules and within the Board's authority as granted in the General Laws and did not prejudice the rights of the appellant.
Finally, Sabetti challenges the Board's ruling because Mr. Clark was absent from the hearing on April 14, 1993. Mr. Clark's absence does not affect the Board's vote because the Board states in its brief to this Court that Mr. Clark reviewed the transcript and evidence collected on said date thereby allowing him to participate in the ruling. Even without Mr. Clark's vote, the Board's findings and ruling would not change, because the outcome, without Mr. Clark's vote, would then be two(2) to one (1).
After a review of the record, this Court finds the Decision and Order of the Board revoking Sabetti's license for three (3) years is supported by reliable and substantial evidence, while the Board's ruling accessing fees and costs against Sabetti is contrary to its own rules and authority. Accordingly, the Board's decision suspending Sabetti's engineering license is upheld and the Board's decision to access fees and costs against Sabetti is denied.
Counsel shall submit the appropriate judgment for entry.
[1] One member of the Board, L. Robert Smith, P.E., Chairman recused himself from this matter.
[2] 5-8-23. Restricted receipts account for fees. — From the proceeds of any fees collected pursuant to the provisions of this chapter, there is hereby created a restricted receipts account which shall be used solely to pay for the administrative expenses incurred for expenses of administering this chapter.
The board is empowered to collect such fees and charges as set forth herein and to apply such fees and charges to the cost of fulfilling the requirements and responsibilities of this chapter. The board shall receive no funds from the state. The board shall share proportionately with the board of registration of professional land surveyors the expenses of operating the two boards.
[3] 5-8-20. Violations and penalties Enforcement
. . .
The attorney general of the state or his or her assistant shall act as legal adviser to the board and render such legal assistance as may be necessary in carrying out the provisions of this chapter. The board may employ counsel and necessary assistance to aid in the enforcement of this chapter, and the compensation and expenses therefor shall be paid from funds as provided in § 5-8-23.
[4] Rule 9 — Costs of Record
The Board may, upon its own motion or for good cause shown, require that a stenographic record be kept of a hearing. The costs of this record shall be assessed against the complaining party unless, after consideration of the evidence, the Board determines that the registrant should bear the cost. The Board may, upon written request and for good cause, waive the costs of the record when a party is indigent or when the party shall be unable to pay.